## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

SIGMATECH, INC., )
)
    Plaintiff, )
)
v. )   Case No.: 5:19-cv-0089-LCB
)
UNITED STATES DEPARTMENT )
OF DEFENSE, et al., )
)
    Defendants. )

## MEMORANDUM OPINION

On January 15, 2019, plaintiff Sigmatech, Inc., filed a Verified Petition for Review of Agency Action ("Petition")(doc. 1) against defendants the United States Department of Defense; Patrick Shanahan, Acting Secretary of Defense; the United States Army; and Mark Esper, Secretary of the Army (collectively, the "Agency"). Sigmatech seeks review of the Agency's actions allegedly designed to prevent (1) Sigmatech from competing for the award of government contracts; and/or (2) award of government contracts to Sigmatech. According to Sigmatech, the Agency's actions constitute a *de facto* debarment.

## Background

In its petition, Sigmatech explained that it holds a Blanket Purchase Agreement ("BPA") with the Agency that allows it to compete for various "task orders" among other BPA holders. While the BPA itself is not a contract, the task

orders issued under the BPA have the force of contract because they obligate both parties. Sigmatech asserted that it has provided excellent services to the Agency since being awarded the BPA, and that its success in performing various task orders led the Agency to increase Sigmatech's work.

However, Sigmatech claims that its relationship with the Agency began to deteriorate in 2015. Since that time, it says, the Agency has taken actions to prevent Sigmatech from competing for and/or obtaining new task orders. According to Sigmatech, the Agency began to classify task orders for "small businesses," despite the increased size of the task orders, in order to prevent Sigmatech, which is not classified as a small business, from being eligible to compete.[1] For example, Sigmatech asserts that it was the incumbent contractor on "Task Order 15" when the Agency issued a re-compete solicitation for further work on the project. According to Sigmatech, the Agency issued that re-compete as a small business set aside, thus preventing Sigmatech from competing for it.

Sigmatech also points to its work on "Task Order 22," which is set to expire on April 26, 2019. According to Sigmatech, the Agency initially tried to set aside the re-compete on that work for small businesses but was unable to find enough small businesses to compete for the job. Then, Sigmatech says, the Agency

_____

[1] Sigmatech explains that it began performing work for the Agency as a small business and won its initial task orders under that classification. However, once the Agency increased Sigmatech's workload, the company expanded such that it was no longer considered a "small business."

attempted to prevent it from competing for the work by using a different contracting vehicle in order to circumvent the BPA procurement process but was again unable to find enough contractors to compete for the work. Finally, Sigmatech says, the Agency delayed the project until it was able to bring new small businesses onto the BPA to bid for the work. Sigmatech claims that it will lose this additional work because it will not have the opportunity to compete for it. Sigmatech asserts that other similarly-situated contractors have been treated differently by the Agency.

The focal point of Sigmatech's petition, however, appears to be "Task Order 18," on which it is the incumbent contractor. Sigmatech alleges that the Agency used the same tactics that it used in relation to the re-compete process on Task Order 22 in order to prevent it from competing for the follow-on work to Task Order 18. Specifically, Sigmatech alleges that the Agency improperly attempted to set aside the work for small businesses and attempted to use a different contracting vehicle. When those tactics failed, Sigmatech says, the Agency unlawfully awarded the procurement to a single small business. Sigmatech claims that after it protested this action, the Agency reissued the re-compete for "full and open" competition, thus allowing Sigmatech to compete for the work. However, the Agency ultimately awarded the follow on to Task Order 18 to DigiFlight, Inc. According to Sigmatech, the Agency's decision to award the contract to DigiFlight

turned on DigiFlight's proposal to use a subcontractor that owned proprietary financial-management software. However, Sigmatech says, it recently learned that DigiFlight did not renew the license for the financial-management software and did not actually plan to use it. Therefore, Sigmatech argues that the Agency's decision to award the contract to DigiFlight was based on a "sham discriminator," i.e., its use of the financial-management software. According to Sigmatech, the decision was arbitrary, capricious, and otherwise contrary to law.

## Procedural History

Sigmatech challenged the Agency's award of Task Order 18 to DigiFlight by first filing a protest with the U.S. Government Accountability Office ("GAO"), which was ultimately unsuccessful. (Doc. 8-1). Then, on September 18, 2018, Sigmatech filed a bid-protest complaint in the United States Court of Federal Claims ("CFC"), in which it challenged the Agency's decision to award Task Order 18 to DigiFlight as being irrational, arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with the law. (Doc. 8-2). The CFC made extensive factual findings regarding the particulars of the Agency's decision and ultimately held that Sigmatech was not entitled to relief. *Sigmatech v. United States*, ___ Fed. Cl. ___ (November 30, 2018), 2018 WL 6920166. Sigmatech appealed the CFC's decision to the United States Court of Appeals for the Federal

Circuit but moved to dismiss the appeal shortly after filing the instant petition in this Court.

## The Present Petition

Sigmatech filed the present petition on January 15, 2019. On January 16, 2019, Sigmatech filed an "Application to Stay Administrative Action Pending Judicial Review" in which it asked this Court to stay the expiration of Task Order 18 along with "any other actions constituting a *de facto* debarment of Sigmatech." (Doc. 4, p. 1). On January 18, 2019, DigFlight filed a motion to intervene, which this Court granted. On January 23, 2019, DigiFlight filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P., based on its assertion that this Court lacked subject-matter jurisdiction over Sigmatech's claim and that the present action was precluded by principles of *res judicata* and collateral estoppel. This Court conducted a hearing over two days in which it heard arguments from the parties regarding the jurisdictional issue. For the reasons set forth below, this Court finds that it lacks subject-matter jurisdiction over Sigmatech's petition.

## Discussion

When "a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th

Cir.1977));[2] *Harris v. Bd. of Trustees Univ. of Ala.*, 846 F.Supp.2d 1223, 1230 (N.D.Ala.2012). A motion under Federal Rule of Civil Procedure 12(b)(1) allows a party to assert a defense of lack of subject-matter jurisdiction. A Rule 12(b)(1) motion to dismiss should be granted "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Harris*, 846 F.Supp. 2d at 1232 (quoting *Ramming*, 281 F.3d at 161). The burden of proof on a motion to dismiss for lack of subject-matter jurisdiction is on the party asserting jurisdiction (i.e., Plaintiff). *Id*. "A federal district court is under a mandatory duty to dismiss a suit over which it has no jurisdiction." *Southeast Bank, N.A. v. Gold Coast Graphics Grp. Partners*, 149 F.R.D. 681, 683 (S.D. Fla.1993) (citing *Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1157 (5th Cir. 1991*); Marshall v. Gibson's Prods., Inc. of Plano*, 584 F. 2d 668, 671–72 (5th Cir. 1978)).

In its motion to dismiss, DigiFlight argues, among other things, that this Court lacks subject-matter jurisdiction to decide Sigmatech's petition. According to DigiFlight, the Court of Federal Claims ("CFC") has exclusive jurisdiction over the present matter and is the only forum in which Sigmatech can bring such a claim. DigiFlight argues that the Administrative Disputes Resolution Act

---

[2] The Eleventh Circuit recognizes all of the Fifth Circuit decisions rendered prior to the close of business on September 30, 1981, as binding precedent. *Bonner v. City of Prichard*, Ala., 661 F.2d 1206 (11th Cir. 1981)(en banc).

("ADRA"), Pub. L. No. 104-320, 110 Stat. 3870 (1996), vests jurisdiction of this

case solely in the CFC. In *Vero Technical Support, Inc. v. U.S. Dept. of Defense*,

437 Fed. Appx. 766, 768-69 (11th Cir. 2011), the Eleventh Circuit explained:

> The Administrative Dispute Resolution Act ("ADRA"), which amended the Tucker Act, "was enacted in 1996 in part to reorganize the jurisdiction of the federal courts over bid protests cases and other challenges to government contracts. Prior to the ADRA, the [COFC] and the federal district courts had enjoyed overlapping jurisdiction to hear these claims." *Labat–Anderson, Inc. v. United States*, 346 F.Supp.2d 145, 149 (D.D.C.2004). The ADRA streamlined this jurisdictional framework by creating "a transitional period during which the federal district courts and the [COFC] would enjoy concurrent jurisdiction over government contract cases." *Id.* at 150. Specifically, the ADRA amendment to the Tucker Act provides:
>
>> Both the Unite[d] States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.
>
> 28 U.S.C. § 1491(b)(1).
>
> The ADRA amendment also contains a sunset provision stating that the jurisdiction of the federal district courts over actions described in § 1491(b)(1) would expire on January 1, 2001, unless otherwise extended by Congress. Congress did not extend the deadline. As the Federal Circuit has explained, "[i]t is clear that Congress's intent in enacting the ADRA with the sunset provision was to vest a single judicial tribunal with exclusive jurisdiction to review government

contract protest actions." *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1079 (Fed. Cir. 2001). Accordingly, the COFC now enjoys exclusive jurisdiction over Tucker Act claims.

Thus, the CFC has exclusive jurisdiction to "render judgment on an action by an interested party objecting to a solicitation by a federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. 1491(b)(1).

Sigmatech argues that its claim does not fall into the category of claims for which the CFC has exclusive jurisdiction. Sigmatech asserts that their claim before this Court is not a bid protest, which would be proper only in the CFC, but rather a *de facto* debarment claim that this Court can review under the Administrative Procedures Act ("APA"). Sigmatech contends that the Agency's actions in allegedly preventing it from competing for or receiving contracts, i.e., improperly setting aside jobs for small businesses, using different contract vehicles, and reducing its existing work, were not protestable actions. Therefore, Sigmatech says, it could not have brought those claims in the CFC. Rather, this Court was the only venue in which it could obtain relief from the Agency's alleged *de facto* debarment.

However, the ADRA's scope is much wider than Sigmatech argues. In *Vero Tech.*, 437 F. App'x 768, the Eleventh Circuit held:

The Administrative Procedure Act ("APA") waives the sovereign immunity of the United States to the extent that it permits "[a] person suffering legal wrong because of agency action" to "seek[ ] relief other than money damages" in federal court. 5 U.S.C. § 702. The Act provides that a reviewing court shall, among other things, "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." Id. § 706(2)(A). However, the Act also provides:

> Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

Id. § 702. Because both the Tucker Act and the [Contract Disputes Act ("CDC")] vest jurisdiction over certain disputes exclusively with the COFC, these statutes forbid relief that would otherwise be available under the APA, mainly the ability to resolve an APA claim that falls within the scope of the Tucker Act or the CDA in a federal district court.

The Eleventh Circuit then proceeded to determine whether the claim in *Vero Tech* fell within the scope of the ADRA amendment to the Tucker Act. This Court must do the same with Sigmatech's claim.

As noted, the ADRA amendment to the Tucker Act, read along with the sunset provision contained in the legislation, provides that the CFC has exclusive jurisdiction to "render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed

contract or to <u>a proposed award or the award of a contract</u> or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1)(emphasis added). In the present case, there is no question that Sigmatech is challenging "a proposed award or the award of a contract," i.e., the follow on to Task Order 18, to DigiFlight. Even viewing this case solely as a *de facto* debarment claim, it follows that Sigmatech believes it was prevented from competing for work on other contracts and is challenging the award of those contracts to other entities. Therefore, Sigmatech's claim in the present case falls within ambit of the ADRA.

In its response to DigiFlight's motion to dismiss, Sigmatech attempts to distinguish the present claim by stating that, although it has challenged the award of Task Order 18 to DigiFlight in the past, i.e., in the proceedings before the CFC, the issues raised in that case are not the same as the issues raised in the present case. However, the fact that the issues raised in the present case may be somewhat different from the issues raised before the CFC does not mean that the issues raised in this case do not still constitute a challenge to "a proposed award or the award of a contract." Even in the instances where Sigmatech points to other alleged conduct by the Agency unrelated to DigiFlight and Task Order 18, that action still involved the Agency's award of a contract to another entity or the Agency's decision not to award the contract to Sigmatech. The *de facto* debarment

that Sigmatech alleges in the present case involves conduct that is related to the award of or the proposed award of a procurement contract. Thus, the Agency's alleged actions fall within 28 U.S.C. § 1491(b)(1), and are therefore exclusively within the jurisdiction of the CFC.

Additionally, in *Res. Conservation Grp., LLC v. United States*, 597 F.3d 1238, 1246 (Fed. Cir. 2010), the Federal Circuit quoted the Conference Report to the ADRA, which provides: "It is the intention of the Managers to give the Court of Federal Claims exclusive jurisdiction over the full range of procurement protest cases previously subject to review in the federal district courts and the Court of Federal Claims." In *Vero Tech*, *supra*, the Eleventh Circuit held:

> While the Tucker Act itself does not define the terms "procurement"
> or "proposed procurement," the Federal Circuit has adopted the
> definition of procurement provided in 41 U.S.C. § 403(2). *Distributed
> Solutions, Inc. v. United States*, 539 F.3d 1340, 1345 (Fed. Cir. 2008).
> Section 403(2) provides that "'procurement' includes all stages of the
> process of acquiring property or services, beginning with the process
> for determining a need for property or services and ending with
> contract completion and closeout." 41 U.S.C. § 403(2).

*Vero Tech*.437 F. App'x at 769. Based on that definition of "procurement," it is clear that all of the Agency's alleged improper activity regarding the various task orders fell within the procurement process. Even the Agency's decision to award the contract to DigiFlight based on its use of certain financial-management software – even if the decision was a sham – was nonetheless an action taken

within the procurement process. Thus, any challenge to those actions must be brought in the CFC.

To be sure, not every claim related to a government contract must be brought in the CFC. For example, in *Eco Tour Adventures, Inc. v. Jewell*, 174 F. Supp. 3d 319, 327-28 (D.D.C. 2016), the plaintiff brought an APA challenge in district court to the government's decision to grant a concessions contract to one of its competitors. The district court denied the defendant's motion to dismiss for lack of subject-matter jurisdiction and held that the plaintiff's claim was proper in the district court because it was not a procurement-related claim.

As noted above, Sigmatech repeatedly attempts to distinguish the present claim from the claim it raised in the CFC by arguing that the present claim is a *de facto* debarment claim, not a bid protest. Implicit in that assertion appears to be an argument that only bid protest claims are allowed to be brought in the CFC or that *de facto* debarment claims cannot be brought in the CFC. However, as explained above, the ADRA is much more expansive. *See Labat-Anderson, Inc. v. United States*, 346 F. Supp. 2d 145, 153 (D.D.C. 2004)("When Congress elected to overrule the *Scanwell* doctrine and vest jurisdiction over *Scanwell*-type cases in the Court of Federal Claims as well, there is no reason to believe that it intended to leave in the federal district courts the small subset of challenges to the procurement process where there was no 'bid protest.' … Instead, the more persuasive result is

the one apparent on the face of the statute: All challenges to the award or proposed award of government contracts, including challenges in connection with government procurements, were to be consolidated in the Court of Federal Claims."). Nothing prohibits *de facto* debarment claims like Sigmatech's from being brought in the CFC as long as they fit within 28 U.S.C. § 1491(b)(1).

Sigmatech also highlights the fact that it only recently learned about DigiFlight's decision not to use the proprietary financial-management software that the Agency cited as a reason it chose to award the contract to DigiFlight.[3] Therefore, it says, it could not have included that information in its case before the CFC. While that may be true, this Court is not aware of anything that would have prevented Sigmatech from filing a new petition or a post-trial motion in the CFC raising that issue and its implications. However, this Court expresses no opinion on the proper method for doing so. The bottom line is that the ADRA removed jurisdiction to hear such claims from this Court and vested it exclusively in the CFC.

Based on the foregoing, this Court finds that it does not have subject-matter jurisdiction over the claims brought by Sigmatech in its Petition for Review of Agency Action. Accordingly, DigiFlight's motion to dismiss pursuant to Rule

---

[3] In its petition, Sigmatech asserts that it learned this information approximately one week before it filed the present petition. (Doc. 1, p. 9).

12(b)(1), Fed. R. Civ. P., is due to be GRANTED, and Sigmatech's petition DISMISSED WITHOUT PREJUDICE. Because this Court finds that it lacks subject-matter jurisdiction over this case, discussion of the *res judicata* and collateral estoppel issues is pretermitted.

        **DONE** and **ORDERED** February 4, 2019.

                                      _____

                                      **LILES C. BURKE**
                                      UNITED STATES DISTRICT JUDGE